1  Frederick W. Gaston, State Bar Number 231179
2  *fwg@gastonandgaston.com*
   GASTON & GASTON
3  A PROFESSIONAL LAW CORPORATION
4  1010 Second Ave, 24th Floor
   San Diego, CA  92101
5  Telephone:  (619) 398-1882
6  Facsimile:   (619) 398-1887

7  Attorneys for Defendants
   Kannaway, LLC
8  General Hemp, LLC
   HDDC Holdings, LLC
9

10

11                    UNITED STATES DISTRICT COURT

12                   SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| CannaVest Corporation, a Nevada corporation, <br>           Plaintiff, <br><br> vs. <br><br> Kannaway, LLC, a California limited liability company; General Hemp, LLC, a California limited liability company; HDDC Holdings, LLC a Delaware limited liability company; and DOES 1-20; <br>           Defendants. | Case No.: 14-cv-02160-CAB-BLM <br><br> DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINIARY INJUNCTION <br><br> Date: February 12, 2015 <br> Time: 2:00 p.m. <br> Dept: 4C <br> Judge: Hon. Cathy A. Bencivengo |

///

///

---

1
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................**2**

**TABLE OF AUTHORITIES** ............................................................................................**3**

**INTRODUCTION**............................................................................................................**4**

**STATEMENT OF FACTS**………………………………………………………………..**4-5**

**ARGUMENT** ...................................................................................................................**5**

I.     LEGAL STANDARD ............................................................................................ **5**

II.    PLAINTIFF AFFORDS IT'S MARK IMPROPER PROTECTIONs……………**9-13**

III.   PLAINTIFF CANNOT ESTABLISH IT WILL ACTUALLY SUFFER
       IRREPARABLE HARM…**……………………………………………………13-18**

**CONCLUSION**...............................................................................................................**18**

# TABLE OF AUTHORITIES

**United States Statutes**

15 U.S.C. 1051, et seq…………………………………………………………………………..5

15 USC 1052……………… ………………………………………………………………………..12

15 U.S.C. 1091-1096………………………………………………………………………..10

**Cases**

Brookfield Commc'ns, Inc. v. W. Coast Entn't Caop., 174 F3d 1036, 1066 (9th Cir. 1999)………………………………………………………………………………………6

*Innovation Ventures v. N2G Distributing, Inc. (quoting Frisch's Rest, Inc. v. Elby's Big Boy of Stubenville, Inc., 670 F.2d 642, 648 (6th Cir.1982)* ………………………………..7.

*eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641* ......... 6

*H. Marvin Ginn Corp. v. International Assoc. of Fire Chiefs, Inc. 782 F.2d 987, 989, (1986)*………………………………………………………………………………………7

*Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc. 736 F.3d 1229 (2013)*……5,6,7,14,18

O*tter Prods., LLC v. BaseOneLabs, LLC* 105 USPQ 2d 1252, 1256………………………..10

*Rodeo Collection, Ltd. v. W. Seventh,* 812 F.2d 1215, 1220 (9th Cir.1987) (citing *Apple Computer, Inc. v. Formula International Inc.,* 725 F.2d 521, 526 (9th Cir.1984)……….13

*Winter v. Natural Res. Def. Counsel, Inc*. 555 U.S. 7, 20 (2008)…………………….5,6,7,14

**Secondary Sources**

1 Nims, *Unfair Competition and Trademarks* Section 37 (1947)…………………………12

Trademark Manual of Examination Procedure…………………………………………11

## INTRODUCTION

Plaintiff CannaVest Corporation's ("CannaVest," or "Plaintiff") Motion for Preliminary Injunction ("Motion") is deficient in every aspect and must be denied accordingly. Plaintiff's claims surround the trademark CANNABIS BEAUTY, a mark registered in the <u>Supplemental Trademark Register</u> of the United States Patent and Trademark Office's (USPTO) Federal Trademark Register. Plaintiff brings unproven claims of consumer confusion and irreparable injury unsubstantiated by evidence and fact. Additionally, Plaintiff has applied an improper threshold of protections to its mark and the "proof" Plaintiff provides is speculative and insufficient to obtain the relief sought.

## STATEMENT OF FACTS

For the purposes of this motion, Defendants rely on the facts set forth below, which are included in Plaintiff's Motion.

Plaintiff alleges that well after it commenced selling its CANNABIS BEAUTY line of products, defendant Kannaway began selling personal care products bearing the name CANNABIS BEAUTY DEFINED, a mark Plaintiff insists is exactly the same as theirs, with the addition of the word "defined". (Motion P. 2, 11-16)

Plaintiff claims that Kannaway's use of the CANNABIS BEAUTY DEFINED mark is irreparably harming CannaVest's reputation and good will. (Motion P. 2, 19-20) Plaintiff claims the record show that consumers are likely to be confused, and have in fact already been confused by Defendant's use of the CANNABIS BEAUTY DEFINED mark.   To

support its claims, Plaintiff offers declarations from biased CannaVest sales associates and irreputable internet message boards that could have been published by any CannaVest employee. Plaintiff's allegations are mere platitudes, unsubstantiated by fact and derived from incredible sources. In any event, such allegations do not show the irreparable harm required for the relief Plaintiff is seeking.

## ARGUMENT

### I. LEGAL STANDARD

Previously, for a party to obtain a preliminary injunction, it must have been established that it is likely to succeed on the merits of its claims and that it's likely to suffer irreparable harm in the absence of preliminary relief, that the basis of equity tips in its favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Counsel, Inc*. 555 U.S. 7, 20 (2008). Recently, the Ninth Circuit Courts have rejected that a mere demonstration of the likelihood of success on the merits of infringement claims entitles the party to a presumption of irreparable harm. "The imposition of irreparable harm requirement for a permanent injunction in a trademark case applies with equal force in the preliminary injunction context." *Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc. 736 F.3d 1229 (2013).* Likelihood of irreparable injury may not be presumed from a showing of likelihood of success on the merits of a trademark infringement claim under Lanham Act; instead, <u>plaintiff must demonstrate irreparable harm to obtain preliminary injunction</u>. 15 USC § 1051 et seq.. Two recent Supreme Court cases have cast doubt on the validity of

this court's previous rule that the likelihood of "irreparable injury may be *presumed* from a showing of likelihood of success on the merits of a trademark infringement claim." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1066 (9th Cir.1999) (emphasis added). Since *Brookfield,* the landscape for benchmarking irreparable harm has changed with the Supreme Court's decisions in *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641, in 2006, and *Winter* in 2008. (Citing *Herb Reed)* "In *eBay,* the Court held that the traditional four-factor test employed by courts of equity, including the requirement that the plaintiff must establish irreparable injury in seeking a permanent injunction, applies in the patent context. Likening injunctions in patent cases to injunctions under the Copyright Act, the Court explained that it "has consistently rejected ... a rule that an injunction automatically follows a determination that a copyright has been infringed," and emphasized that a departure from the traditional principles of equity "should not be lightly implied." *Id.* at 391–93, 126 S.Ct. 1837 (citations omitted)(Citing *Herb Reed).* The Appellate Court in *Herb Reed* has applied the "holding that the *eBay principal*-that a plaintiff must establish irreparable harm—applies to a preliminary injunction in a trademark infringement." The Appellate Court ruled that requisite factual findings must be found establishing the irreparable harm to the Plaintiff before a preliminary injunction shall be granted.  In this case, Plaintiff has not demonstrated such irreparable harm.

In *Winter,* a preliminary injunction was reversed because the demonstration of irreparable harm was based on a "possibility". A standard the appellate court found to be "too lenient". This is the standard Plaintiff applies in its Motion. The Plaintiff cites to alleged instances of public confusion, unsupported by fact, although the courts in *Herb Reed* found confusion, such as an email sent by a customer, was not evidence of irreparable harm, but simply underscored customer confusion. Accordingly, Plaintiff has not adequately pleaded it claims.

### a. Plaintiff's CANNABIS BEAUTY Mark is Not Strong

Factors used in determining if whether the likelihood of confusion exists with a trademark include determining its strength, the relatedness of the goods or services offered by the plaintiff and defendant, the similarity of the marks, any evidence of actual confusion, the marketing channels used by the parties, the probable degree of purchaser care and sophistication, the defendants intent in seeking the mark, and the likelihood of either party expanding its product line using the marks *Innovation Ventures v. N2G Distributing, Inc. (quoting Frisch's Rest, Inc. v. Elby's Big Boy of Stubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982).* Plaintiff's CANNABIS BEAUTY mark is not strong. It is a descriptive mark, the weakest type of mark on the trademark continuum of fanciful, suggestive or descriptive marks. "The generic name of a thing is in fact the ultimate in descriptiveness". *H. Marvin Ginn Corp. v. International Assoc. of Fire Cheifs, Inc. 782*

*F.2d 987, 989, (1986).* Indeed, the weak nature of Plaintiff's mark is why it was assigned to the Supplemental Register to begin with.

The goods produced by the Plaintiff and Defendants relate only in that they are lines of beauty products derived from elements of cannabis. Defendants produce a line of facial care products (cleansers, toners, serum and moisturizers), CBD capsules, and a salve. Plaintiff's line of Cibaderm products include a salve, body washes, hair products and hand creams. The only obvious overlap in type of product is Plaintiff's Cibaderm Hemp Calm Salve and Defendants' Cannabis Beauty Defined Salve. It should be noted that a quick Google search of "cannabis salve" produces a number of sources for similar products, not produced by either Party, sold in retailers ranging from Nordstrom to Esty. (Exhibit "A") Clearly salves created from cannabis derivatives are becoming increasingly more common and Plaintiff cannot rely on the overlap in a single product, packaged in manner distinctive of Plaintiff's as entitlement to monopolize the market on cannabis beauty products or salves.

### b. Intent in Selecting the CANNABIS BEAUTY DEFINED Mark

Defendants' creation of the CANNABIS BEAUTY DEFINED mark was not to copy Plaintiff or piggy back off of Plaintiff's CANNABIS BEAUTY mark or marketing efforts. The CANNABIS BEAUTY DEFINED mark is rather intended to be a cleaver play on the acronym for cannabidol (CBD), one of the active cannabinoids found in cannabis and similarly found in Defendants' CANNABIS BEAUTY DEFINED products (acronym also

CBD). CBD is a common acronym used among vendors and products in the hemp product distribution community. Defendants produce other lines of products affiliated with the CBD acronym. Plaintiff cannot expect to hold claim to all beauty lines created from cannabis derivatives and to the nonfanciful mark "CANNABIS BEAUTY". Indeed, in Plaintiff's Notice of Motion it seeks to bar the use of any use of CANNABIS BEAUTY with any other term, word, name, logo, symbol, device, designation or design in any manner whatsoever. (Notice Motion P. 2 1-4). Again, Plaintiff applies protections due to a mark on the Principal Register to its nondistinctive mark. It should be noted that marks placed on the Supplemental Register are afforded no opposition period. Defendants would have vigorously opposed the registration of the CANNABIS BEAUTY mark by Plaintiff had they had the opportunity. The original idea for the CANNABIS BEAUTY mark was created by Defendants' sister company and pirated by Plaintiff. Defendants' intend to bring a cross-complaint against Plaintiff to address these claims.

## II.   **PLAINTIFF AFFORDS IT'S MARK IMPROPER PROTECTIONS**

The CANNABIS BEAUTY mark was originally filed by Plaintiff on February 21, 2014. Plaintiff's mark was rejected by the USPTO for being descriptive and nondistinctive and placed on the Supplemental Register on September 30, 2014. Marks registerable on the Supplemental Register include surnames, geographical terms, nodistinctive terms, and descriptive marks capable of acquiring distinctiveness. Plaintiff's arguments regarding the protections it is afforded as the owner of this nondistinctive mark are misplaced. Plaintiff

argues it has superior rights in the mark, but it does not. (Motion P. 117). Plaintiff's CANNABIS BEAUTY mark is not subject to the protections of a trademark placed on the USPTO's Principal Register. Trademarks placed on the Principal Register convey presumptions of validity, ownership and exclusive rights to use the mark; it is incontestable. Registration of a mark in the Supplemental Register does not afford such protections. 15 USC Sections 1091-1096. See *Otter Prods., LLC v. BaseOneLabs, LLC* 105 USPQ 2d 1252, 1256 (finding that while ownership of a registration on the Supplemental Register established an standing to oppose registration of an applicant's mark, it does not establish that they owned a proprietary interest in the mark).

### a. Plaintiff Has No Superior Rights in CANNABIS BEAUTY

Defendants will be bringing a cross action against Plaintiff for similar allegations of trademark infringement. The mark CANNABIS BEAUTY was originally created in 2013 by Defendants' sister company, Medical Marijuana, Inc. (MJNA). In December of 2013, CANNABIS BEAUTY DEFINED was registered to Defendant HDDC Holdings, LLC by attorney Kenni Glatzel. Plaintiff's principal officer, Michael Mona, a close business partner and personal friend of the principals behind MJNA pirated the original CANNABIS BEAUTY mark and rushed to register it unbeknownst to the Defendants. The rejection of the mark to the Supplemental Register inhibited Defendants from opposing the application. Subsequently, when negotiations for the forced licensing agreement stalled, CannaVest officer, Michael Mona, again pressured Michael Llamas, and succeeded in

having Mr. Llamas execute the Assignment Agreement under duress, which turned over the CANNABIS BEAUTY DEFINED marks to Plaintiff.

Plaintiff always knew of Defendants intentions to launch a line under the CANNABIS BEAUTY DEFINED mark and took measures to attempt to force a licensing agreement and ultimately, the eventual assignment of the CANNABIS BEAUTY DEFINED marks though means of duress. CannaVest and their agents improperly applied for the trademark CANNABIS BEAUTY, to which it had no entitlement to force the Defendants into a licensing agreement. Indeed, Defendants' cross-action will shed much needed clarity on the fraudulent measures taken by the Plaintiff and its officers. Until such time, the Court should maintain the status quo and deny Plaintiff's request for a preliminary injunction.

### b. Plaintiff's Mark Has Acquired No Secondary Meaning

Plaintiff argues that through its alleged continued sales and advertising promotion of its CANNABIS BEAUTY line, its mark has acquired secondary meaning. Plaintiff insists customers associate the mark with a particular source of personal care products thus entitling them to certain protections and injunctive relief. Yet again, Plaintiff has misapplied legal theories to suit its allegations. Trademarks that are placed on the Supplemental Register, such as Plaintiff's CANNABIS BEAUTY, mark have inherently *not* acquired distinctiveness and thus the doctrine of secondary meaning does not apply. As defined by the Trademark Manual of Examination Procedure ("TMEP"), secondary

meaning is proof [the mark] has become distinctive as applied to the applications goods or service in commerce. To be refused registration on the Principal Register under Section (e)(1) of the Trademark Act, a mark must be merely descriptive… of the goods or services to which it relates, as is the case with the descriptive mark CANNABIS BEAUTY. 15 USC 1052(e)(1).

A term which is descriptive…may through use by one producer with reference to its product, acquire a special significance so that to the consuming public the word has come to mean that the product is produced by a certain manufacturer. 1 Nims, *Unfair Competition and Trademarks* Section 37 (1947). For a mark on the Supplemental Register to acquire secondary meaning or distinctiveness, there must be proof that it has become distinctive as applied to the applicant goods or service in commerce. A mark placed on the Supplemental Register requires a showing of prima facia evidence that the mark has become distinctive as used in exclusive and continuous use thereof as a mark by the applicant in commerce for five years before the claim of distinctiveness can be made. 15 USC 1052(f). Because Plaintiff's CANNABIS BEAUTY mark has only been used in commerce since September 2013, it cannot have acquired secondary meaning as a mark on the Supplemental Register as Plaintiff claims and its motion for preliminary injunction should be denied.

### c. The CANNBIS BEAUTY DEFINED mark has acquired secondary meaning to Defendants

The CANNABIS BEAUTY DEFINED mark has become distinctive to Defendants' product line. A quick Google Search of "Cannabis Beauty Defined" shows the immediate relation between the mark and Kannaway. Plaintiff markets its line under the brand Cibaderm, which is in no way linked to Kannaway. The status quo can easily be maintained though Plaintiff's use of the Cibaderm mark and Defendants use of the CANNABIS BEAUTY DEFINED mark which has become distinctive to Kannaway. Kannaway has invested substantial time and money marketing the CANNABIS BEAUTY DEFINED mark. The mark has become distinctive to the company. The CANNABIS BEAUTY mark, on the other hand, marketed by Plaintiff, is not distinctive to CannaVest. Its assignment to the Supplemental Register is direct evidence of this. Defendants have a superior mark in CANNABIS BEAUTY DEFINED, placed on the Primary Register, and have superior rights to such mark. The mark was registered in December of 2013 to defendant HDDC Holdings, LLC and was first used in commerce by Defendants until Plaintiff unlawfully acquired it though fraudulent means.

### III. PLAINTIFF CANNOT ESTABLISH IT WILL ACTUALLY SUFFER IRREPARABLE HARM

Gone are the days when "[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Rodeo Collection, Ltd. v. W. Seventh,* 812 F.2d 1215, 1220 (9th Cir.1987) (citing *Apple Computer, Inc. v. Formula*

*International Inc.,* 725 F.2d 521, 526 (9th Cir.1984)  Courts now require a Plaintiff to establish that it will *actually suffer irreparable harm* absent a preliminary injunction. *(*Citing *Winter)*. "The Court reversed a preliminary injunction [in *Winter*] because it was based on the *possibility* of irreparable harm. Such standard is "too lenient". (Citing *Herb Reed*)

Plaintiff's allegations are grounded in platitudes and simply do not meet the required threshold of established proof that it has or will suffer irreparable injury caused by Defendants. Plaintiff suggests that unless restrained by the Court unlawful acts shall be performed resulting in irreparable harm to Plaintiff. (Notice P. 2 21-22). This statement is speculative and falls short of the required standard. Plaintiff tries to string together petty internet message board complaints to give its arguments basis that the Defendants are irreparably harming Plaintiff, but these complaints are irrelevant to Plaintiff's arguments, have nothing to do with the CANNABIS BEAUTY DEFINED line, and show no established harm to Plaintiff. Rather, Plaintiff dredges up complaints of multi-level marketing participants that we're not profitable in their venture to establish irreparable harm. These minor and unrelated complaints are directed at the Kannaway company directly, not the CANNABIS BEAUTY DEFINED line or products, and therefore Plaintiff's arguments they've suffered irreparable harm due to an alleged negative reputation on the part of Kannaway are moot. It should be noted that in *Herb Reed*, speculation of harm to the Plaintiff's reputation did not meet the appellate court's standard

of showing irreparable harm and the district courts reliance on such speculation was not sufficient to issue injunctive relief.

Plaintiff cannot establish this proof, because no such irreparable harm exists. Plaintiff <u>must</u> establish this however to obtain the relief sought and accordingly its Motion must be denied. The Ninth Circuit has held that likely hood of prevailing on the merits of a trademark claim are not sufficient for injunctive relief. It must be established that Plaintiff has or will suffer irreparable harm. (Citing *Herb Reed)*. Furthermore, the confusion offered by Plaintiff as evidence of harm comes from incredible sources. Plaintiff attaches an email from a woman named Lea Walters who seems to be loosely affiliated with Plaintiff professionally, and asks vague questions about the relationship of entities, but the email gives little context to the real "confusion" and how it led to harm. (Motion Exhibit "K") Additionally, Plaintiff offers a ripoff report so full of behind the scenes details it begs the question which of Plaintiff's employees penned it. (Motion Exhibit "U" & "U2") At any rate, the only evidence Plaintiff has produced that could possibly have any credibility (although Defendants do not agree this is evidence of harm) are the declarations of the biased perceptions of sales people employed by Plaintiff, who are having trouble selling novelty hemp based beauty products in a competitive market. (Decls. Boucher & Markley). Even if the Court were persuaded by Plaintiff, in *Herb Reed* the appellate court held that evidence of past confusion alone is not sufficient to show irreparable harm. As such, Defendants contend Plaintiff has not met its burden.

Plaintiff has not established any organic confusion among consumers. Rather, Plaintiff produces gossip ridded emails and a press release it put out itself to clarify the relationship between General Hemp, Kannaway and Plaintiff. The press release contains a vague statement from Mr. Mona III about allegations of telephone calls from the confused public. (Motion Exhibit L") The public calling CannaVest, however, to inquire about such affiliation makes little sense. There may have been a number of reasons CannaVest would put out such a press release, Defendants cannot speculate on such reasoning, but contend it had nothing to do with public confusion. Any confusion that may exist is perpetuated by Plaintiff and encouraged though its use of the pirated CANNABIS BEAUTY mark.

Defendants have spent significant time and resources marketing the CANNABIS BEAUTY DEFINED line. If any confusion were to lie with the public, which Defendants refute, it would only be to the benefit of Plaintiff in the form of higher sales of Cibaderm and free marketing publicity. Again, Defendants contend the confusion offered by Plaintiff is unsubstantiated by proof. Accordingly, Defendants contend Plaintiff has not produced evidence of actual harm and the speculative statements they do offer should be rejected.

It should be noted that there is a long personal history between the principal officers of CannaVest and the Defendant entities. In fact, Defendants are in possession of a video from a Kannaway investor event back in March 2014 where CannaVest's president, Michael Mona is addressing the room of investors, he states that "CBD is the future", he praises the phenomenal accomplishments of Troy Nihart, all while standing in front of sign

for the launch of Kannaway and the CANNABIS BEAUTY DEFINED line. Mr. Mona goes on to praises Michael Llamas for helping a sick man regain his ability to play golf, he gives him "all the credit" saying CBD&D (CANNABIS BEAUTY DEFINED and design) were just four letters of the alphabet before Michael Llamas. Mr. Mona proceeds to joke about how he fights with Mr. Llamas more than he fights with his own wife. Indeed the officers of CannaVest knew of the launch and marketing plans Kannaway had for CANNABIS BEAUTY DEFINED and even encouraged and ratified such actions until the potential success of Kannaway's line caused the principals of CannaVest to put money and greed before a lifelong friendship. (See Exhibit "B", still video shots of Micahel Llamas speaking at the Kannaway lunch which heavily featured the CANNABIS BEAUTY DEFINED line.)

    The relationship of the Parties also lends some much needed context to the casual dealing of the officers of the Parties to this action.  Mr. Mona was privy to all Kannaway's plans to market the CANNABIS BEAUTY DEFINED line. CannaVest knew of the purported "sham" licensing agreement as well. The absence of reference to the Kannaway license in the subsequent purported trademark assignment is not indicative of a sham or deceit on the part of Defendants. Simple review of the Trademark Assignment show it to be a sparse, hardly two paged document that barley addresses the transaction at all. Plaintiff argues Defendants have never challenged CannaVest's rights to use the CANNABIS BEAUTY mark and have never tried to enforce the terms of the licensing

agreement, however, Defendants will be initiating a cross action to prosecute the piracy and infringement by Plaintiff.

Furthermore, to be successful on a motion for preliminary injunction, "[Plaintiff] must establish that other remedies available at law, such as monetary damages, are inadequate to compensate for the [alleged] injury arising from [Defendants'] continuing allegedly infringing use of the mark." (Quoting *Herb Reed)* Plaintiff has not done so. Accordingly, Plaintiff has not established the irreparable harm required for injunctive relief and its Motion must be denied.

## **CONCLUSION**

In the interest of fairness and justice, the status quo can and should be maintained Accordingly, Defendants respectfully request the Court deny Plaintiff's Motion

Respectfully submitted,

GASTON & GASTON
A PROFESSIONAL LAW CORPORATION

DATED:     January 29, 2015                BY:_  /s/Frederick W. Gaston__
                                           FREDERICK W. GASTON
                                           Attorneys For Defendants
                                           General Hemp, LLC, Kannaway, LLC
                                           and HDDC Holdings, LLC