1   Frederick W. Gaston, State Bar Number 231179
2   *fwg@gastonandgaston.com*
3   GASTON & GASTON
    A PROFESSIONAL LAW CORPORATION
4   1010 Second Ave, 24th Floor
    San Diego, CA  92101
5   Telephone:  (619) 398-1882
6   Facsimile:   (619) 398-1887

7   Attorneys for Defendants and Counterclaimants
8   Kannaway, LLC
    General Hemp, LLC
9   HDDC Holdings, LLC

10                   UNITED STATES DISTRICT COURT
11                SOUTHERN DISTRICT OF CALIFORNIA

12  | | |
    |---|---|
13  CannaVest Corporation, a Nevada corporation, ) Case No.: 14-cv-02160-CAB-BLM

| | |
|---|---|
| CannaVest Corporation, a Nevada corporation, ) | Case No.: 14-cv-02160-CAB-BLM |
| Plaintiff, ) | KANNAWAY, LLC, GENERAL HEMP, LLC, AND HDDC HOLDINGS, LLC's COUNTERCLAIMS |
| vs. ) | (1) RECISSION |
| Kannaway, LLC, a California limited liability company; General Hemp, LLC, a California limited liability company; HDDC Holdings, LLC a Delaware limited liability company; and DOES 1-20; ) | (2) UNFAIR COMPETITION UNDER §43 OF THE LANHAM ACT (3) FRAUD (4) DECLARATORY RELIEF (5) UNFAIR BUSINESS PRACTICES CAL. BUS. AND PROF. CODE § 17200, ET. SEQ. |
| Defendants. ) | JURY TRIAL DEMANDED |
| Kannaway, LLC, a California limited liability company; General Hemp, LLC, a California limited liability company; HDDC Holdings, LLC a Delaware ) | |

1 limited liability company;                    )
2                                                )
3               Counterclaimants,                )
               vs.                               )
4 Michael Mona, Jr. , an individual;            )
5 CannaVest Corporation, a Nevada               )
  corporation, ROES 1-20;                        )
6               Counterdefendants.               )
7 _____       )

## COUNTERCLAIMS

## THE PARTIES

Kannaway, LLC ("Kannaway"), General Hemp, LLC ("General Hemp") and HDDC Holdings, LLC ("HDDC"), by way of Counterclaim against CannaVest, Corp. ("CannaVest") asserts as follows:

1.      Kannaway is, and at all times mentioned herein was, a limited liability company organized under the laws of the State of Nevada, with a principal place of business in San Diego, California. Kannaway manufactures and sells hemp-based CBD rich beauty products.

2.      General Hemp is, and at all times mentioned herein was, a limited liability company organized under the laws of the State of Delaware, with a principal place of business in San Diego California. General Hemp provides funding for hemp and legal cannabis investments.

3.      HDDC Holdings, LLC is, and at all times mentioned herein was, a limited liability company organized under the laws of the State of Nevada, with a principal place of business in San Diego, California.

4.      Upon information and belief, Michael Mona, Jr. is an individual with a primary place of residence in San Diego, California. Michael Mona, Jr. is the Chief Executive Officer of CannaVest Corp.

5.      Upon information and belief, CannaVest Corp. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in San Diego, California. CannaVest is a wholesale supplier of hemp based oil and hemp fiber.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over these counterclaims under 28 U.S.C. § 1367 because Kannaway, HDDC and General Hemp's claims are so related to the claims asserted in CannaVest's Complaint that they form part of the same case or controversy.

7.      Pursuant to 28 U.S.C. § 1391, venue is proper in this District because CannaVest is subject to the Court's personal jurisdiction with respect to these counterclaims as CannaVest and Michael Mona, Jr. conduct business in this judicial district and have, and continue, to cause harm to Kannaway, General Hemp and HDDC in this district.

## FACTUAL BACKGROUND FOR ALL COUNTERCLAIMS

8.      This dispute arises from third party, Medical Marijuana, Inc.'s ("MJNA") original creation, design and manufacture of a product known as "Cibaderm" in or around May 2013. The original Cibaderm product was produced packaged and fully funded by MJNA at the MJNA facility. The product, however, had limited market acceptance.

9.      In or about June 2013, a new company was formed by MJNA known as HempMeds PX, LLC ("HempMeds"). HempMeds received funding from HDDC Holdings, LLC ("HDDC"), a company which is partly owned and managed by Michael Llamas. The goal of HempMeds was to produce a more marketable Cibaderm product.   Accordingly, HempMeds reformulated, repacked and relabeled the

Cibaderm product. The new label contained the term "Cannabis Beauty." The newly reformulated Cibaderm product bearing "Cannabis Beauty" was then sold to the public by HempMeds.

10.     The trademark CANNABIS BEAUTY DEFINED was first adopted by HDDC and the line of products was developed and brought to market by their distributor, third party, HempMeds, in December 2013. The initial distributor for the CANNABIS BEAUTY DEFINED line was third party, HempMeds, who also helped adopt and develop the CANNABIS BEAUTY mark. HempMeds purchased the CBD oil need to manufacture the CANNABIS BEAUTY DEFINED product line from CannaVest. The CANNABIS BEAUTY DEFINED line of products was to then be marketed by Kannaway through various tradeshows and on its website.

11.     It was around this time, that unknown to Counterclaimants, CannaVest, a wholesale supplier and producer of bulk hemp based products and oil, of which Michael Mona, Jr. is CEO, secretly applied for the CIBADERM® trademark with the USPTO. Importantly, CannaVest was originally founded and funded by Michael Llamas. The current CannaVest president, Michael Mona, Jr., who at the time was the best friend of Michael Llamas and is the Godfather of Mr. Llamas' only child, was appointed to the position in CannaVest.

12.     Thereafter, on or about December 2013, HDDC obtained the CANNABIS BEAUTY DEFINED mark (adopted and developed with the help of HempMeds) for its new CANNABIS BEAUTY DEFINED line of products which was to be designed and manufactured by HempMeds. To produce the product, HempMeds was required to purchase bulk hemp oil from CannaVest with which it would manufacture the CANNABIS BEAUTY DEFINED line. HempMeds negotiated with Michael Mona, Jr. for extended credit terms and an extended line of credit to purchase the Hemp oil from CannaVest and produce the Cannabis Beauty Defined products.

13.     The CANNABIS BEAUTY DEFINED mark was subsequently registered with the United States Patent and Trademark Office ("USPTO") by HDDC and was placed on the Principal Register. On February 27, 2014, HDDC, owner of the CANNABIS BEAUTY DEFINED mark, exclusively licensed the CANNABIS BEAUTY DEFINED mark to Kannaway and General Hemp for a 1% royalty.

14.     It was in or around February 2014, when CannaVest improperly applied to register the mark CANNABIS BEAUTY at the USPTO. CannaVest fraudulently asserted it had superior rights to the CANNABIS BEAUTY mark and fraudulently submitted an application to register the mark with the USPTO. Both CannaVest and its principal, Michael Mona, Jr. were aware and therefore had notice of the Kannaway license issued in February 2014, and even assisted Kannaway in spending millions of dollars promoting the CANNABIS BEAUTY DEFINED product line, including appearing on stage with Kannaway at the Sheraton in Mission Valley, California at a product launching event hosted by Kannaway for the promotion of the CANNABIS BEAUTY DEFINED product line. Instead of respecting the Counterclaimant's ownership and rights in these trademarks, CannaVest and Michael Mona, Jr. misappropriated the CANNABIS BEAUTY mark, and fraudulently represented to its legal counsel (legal counsel which simultaneously represented CannaVest, Medical Marijuana, Inc. and HempMeds PX, LLC) that the CANNABIS BEAUTY mark was in fact the property of CannaVest.

15.     The CANNABIS BEAUTY mark was subsequently recorded with the USPTO by attorney Barry Sloat. Counterclaimants had no opportunity to object to CannaVest's improper trademark application because the CANNABIS BEAUTY mark was rejected by the USPTO for registration on the Principal Register for being descriptive and non-distinctive. Subsequent to CannaVest's fraudulent application for the CANNABIS BEAUTY mark with the USPTO, continuous negotiations between CannaVest, Counterclaimants, MJNA, and HempMeds took place regarding the assignment of ownership of these marks, but to no fruition. It should be noted that CannaVest was originally founded by Michael

Llamas for the business of supplying bulk hemp oil. The Hemp oil was necessary for HempMeds to manufacture the Counterclaimants' consumer end products under the marks CANNABIS BEAUTY and CANNABIS BEAUTY DEFINED.

16. Following the license by HDDC to Kannaway and General Hemp, HDDC subsequently assigned the CANNABIS BEAUTY DEFINED mark, as well as three additional proprietary and valuable marks, to CannaVest while under duress from CannaVest's CEO, Michael Mona, Jr., for the purported consideration of $1.00, which has never been rendered to date. The consideration imposed (and never rendered) for these valuable marks is laughable and lends great merit to Counterclaimants' position that such Assignment by HDDC was orchestrated under the duress and undue influence of CannaVest and Michael Mona, Jr.

17. To coerce the assignment, in March of 2014, Michael Mona, Jr. made various threats and represented to Michael Llamas directly and through various innuendos, that crippling economic hardships would be imposed on HempMeds by CannaVest if the CANNABIS BEAUTY DEFINED trademark was not assigned to CannaVest. Michael Mona Jr., in his capacity as CEO of CannaVest, threatened to cut off oil supplies to Counterclaimant's distributor, HempMeds, putting HempMeds out of business, if the marks were not signed over. Such actions by CannaVest would directly impact the financial condition of the Counterclaimants; if their distributor had no oil to manufacture their products, Counterclaimants in turn would face tremendous hardship and economic loss. The acts of Michael Mona, Jr. and CannaVest constitute unfair competition.

18. The threats made by CannaVest and Michael Mona, Jr. were taken extremely seriously as the hemp oil purchased from CannaVest was crucial to the Counterclaimants' product line and income stream. Additionally, Mr. Llamas took the threats by Michael Mona, Jr. to be especially serious, as Mr. Llamas has firsthand knowledge of the results of the Nevada Gaming Control Board's investigation into

Mr. Mona, which found that Michael Mona, Jr. is closely associated with figures involved in organized crime, precluding Mr. Mona from being granted a gaming license in that state. Additionally, Mr. Mona made threats of violence and bodily harm towards the Counterclaimants. Counterclaimants are aware Mr. Mona has a history of violent behavior in the State of California, having been arrested for assault, giving further merits to the validity and severity of Mr. Mona's various threats.

19.     Accordingly on March 12, 2014, while under extreme duress and undue influence on behalf of Plaintiff and Michael Mona, Jr., Michael Llamas Assigned the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD, and HEMP CBD Complex trademarks to CannaVest. The consideration for the assignment of these four very valuable marks was purportedly $1.00, which has never been paid.

20.     Moreover, CannaVest previously supplied the hemp oil used to make the CANNABIS BEAUTY DEFINED line to the Counterclaimants' distributor, third party HempMeds. CannaVest never previously engaged in direct retail sales until it breach its *Non-Exclusive Distribution Agreement* with Counterclaimants' distributor, HempMeds.   Now, CannaVest claims to directly sell products to consumers, a contention that is directly contradicted by the *Corporate Summary and Subscription Documents of CannaVest Corp.* Indeed, as of October 29, 2013, when the document was prepared, CannaVest was a "supplier" of hemp oil and *not* in the retail beauty product at all industry. Furthermore, the *Corporate Summary and Subscription* documents go on to divide CannaVest's products into the following categories:

1) Health and Wellness

    a.   Over-the-counter (OTC)

    b.   Prescription medications

2) Bulk industrial hemp oil

3)  Hemp fiber.

None of these categories describe "the business of developing, producing, marketing, and selling end-consumer products contains industrial hemp compounds with a focus on CBD" as stated in paragraph 15 of its Amended Complaint.

21.    Moreover, in their current product portfolio, neither CANNABIS BEAUTY, nor CANNABIS BEAUTY DEFINED products were mentioned at all. The Cibaderm line of products mention in the CannaVest portfolio was initially created by MJNA and now appear to be the very same line that Plaintiff references in its Amended Complaint as a "hemp based line of beauty products (shampoo, conditioner, body wash, body lotion, hand cream and salve) under the brand name CANNABIS BEAUTY."   Indeed, CannaVest makes allegations that it launched the CANNABIS BEAUTY line in September of 2013, however in the *CannaVest Agenda for Annual Board Meeting* held on July 25, 2013, created just over one month before the purported launch, there was again no mention of the CANNABIS BEAUTY brand launch. This is because the CANNABIS BEAUTY and CANNABIS BEAUTY DEFINED marks did not belong to CannaVest and were not CannaVest's to add to its portfolio. Rather, Counterclaimants held superior rights to these marks as they had developed and adopted the marks, in conjunction with third parties HempMeds and MJNA, and used the marks first in commerce.

## CAUSES OF ACTION

### RESCISSION
### (AGAINST CANNAVEST)

22.    Counterclaimants hereby incorporate paragraphs 1-21 of this Counterclaim as if fully set forth herein.

23.    On or about March 12, 2014, CannaVest and Michael Mona, Jr. knowingly coerced and threatened Counterclaimants, which was a proximate cause for HDDC to transfer the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD and HEMP CBD

Gaston ❀ Gaston
APLC

COMPLEX to CannaVest while under duress and undue influence on the part of Counterdefendants, and each of them.

24.     On or about March 12, 2014, CannaVest and Michael Mona, Jr. knowingly made misrepresentations and threats to Counterclaimants, which was a proximate cause for HDDC to transfer the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD and HEMP CBD COMPLEX to CannaVest while under duress and undue influence on the part of Counterdefendants, and each of them.

25.     Counterclaimants seek an order of recession returning the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD and HEMP CBD COMPLEX marks to HDDC. Additionally, Counterclaimants were harmed, and seek damages for the inducement of the fraudulent assignment agreement, as described above.

26.     Through their conduct herein alleged, Counterdefendants acted with intentions of depriving Counterclaimants of their money and property, thereby justifying an award of punitive damages against Counterdefendants.

### DECLARATORY RELIEF
### (AGAINST CANNAVEST)

27.     Counterclaimants hereby incorporate paragraphs 1-26 of this Counterclaim as if fully set forth herein.

28.     Counterclaimants seek an order of relief from this Court declaring the Licensing Agreement executed between HDDC, General Hemp and Kannaway is valid and enforceable.

29.     Counterclaimants seeks further orders declaring the assignment of the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD and HEMP CBD COMPLEX marks to CannaVest is void and unenforceable, including any registration thereof, due to the fraud and duress on the part of Counterdefendants.

**FRAUD**
**(AGAINST ALL COUNTERDEFENDANTS)**

30.      Counterclaimants hereby incorporate paragraphs 1-29 of this Counterclaim as if fully set forth herein.

31.      In March of 2014, Michael Mona, Jr. and CannaVest acquired an Assignment of the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD and HEMP CBD COMPLEX marks through fraudulent and intimidating means, inducing Counterclaimant HDDC to assign over the marks through threats and coercion.

32.      Counterdefendants' fraudulently asserted they had superior rights in the CANNABIS BEAUTY DEFINED, CANNABIS BEAUTY DEFINED and Design, HEMP CBD and HEMP CBD COMPLEX marks.

33.      Through such fraudulent misrepresentations, Counterdefendants caused such marks to be registered to CannaVest improperly and fraudulently with the USPTO.

34.      At the time Counterdefendants misrepresented the marks to be theirs, they knew the misrepresentations to be fraudulent and inaccurate.

35.      Accordingly Counterclaimants, and each of them, have been damaged by the malicious and oppressive acts of Counterdefendants, in that they have lost the use of, and compensation derived from, the marks.

36.      Through their conduct herein alleged, Counterdefendants acted with intentions of depriving Counterclaimants of their money and property, thereby justifying an award of punitive damages against Counterdefendants.

**UNFAIR COMPETITON**
**(AGAINST ALL COUNTERDEFENDANTS)**

37.     Counterclaimants hereby incorporate paragraphs 1-36 of this Counterclaim as if fully set forth herein.

38.     Counterdefendants' conduct constitutes unfair competition in violation of Section 43 of the Lanham Act, 15 USC Section 1125(a).

39.     As a direct and proximate result of the conduct of Counterdefendants' unfair competition, Counterclaimants have been harmed in an amount according to proof, and will suffer further, irreparable injury unless the requested relief is granted.

40.     The conduct of Counterdefendants' is intentional, willful, wonton, malicious, oppressive and reckless, thus warranting enhanced and/or treble damages and attorney's fees pursuant to 15 U.S.C. Section 1117(a).

**UNFAIR BUSINESS PRACTICES
(CAL. BUS. AND PROF. CODE § 17200, et. seq.)
(AGAINST ALL COUNTERDEFENDANTS)**

41.     Counterclaimants hereby incorporate paragraphs 1-40 of this Counterclaim as if fully set forth herein.

42.     The Counterdefendant's acts hereinabove alleged are acts of unfair competition within the meaning of California Business and Professions Code Section 17200, et seq. including Section 17203.

43.     As a direct and proximate result of the conduct of Counterdefendants' unfair business practices, Counterclaimants have been harmed in an amount according to proof, and will suffer further, irreparable injury unless the requested relief is granted.

44.     As a direct, proximate, and foreseeable result of the Counterdefendants' wrongful conduct, as alleged above, Counterclaimants suffered loss of business and are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Counter-Defendants as a result of such unfair business acts or practices.

Furthermore, Counterdefendants must be enjoined from engaging in this wrongful conduct and from causing additional harm to Counterclaimants.

**PRAYER FOR RELIEF**

**WHEREFORE** Counterclaimants pray for judgment against Counterdefendants, and each of them, as follows:

A.   That Counterdefendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Counterclaimants;

B.   That Counter-Defendants be adjudged to have unlawfully and unfairly competed against Counterclaimants under the laws of the State of California, Cal. Bus. & Prof. Code § 17200, et seq.;

C.   That such damages and profits be trebled and awarded to Counterclaimants and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Counterdefendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

D.   That Counterclaimants be awarded damages in an amount sufficient to compensate it for the damage caused by Counterdefendants' unfair competition under California Business and Professions Code §§ 17200 and 17203 et seq.;

E.    That Counterclaimants be granted prejudgment and post judgment interest;

F.   That Counterclaimants be granted attorney's fees;

G.   That Counterclaimants be awarded Punitive damages for the malicious, wonton and willful conduct of Counterdefendants;

H. For general damages, including statutory damages, in a sum in excess of the jurisdictional minimum of this Court, according to proof;

I. For compensatory damages in excess of the jurisdictional minimum of this Court, according to proof;

J. For consequential damages in excess of the jurisdictional minimum of this Court, according to proof;

K. That Counterclaimants be granted costs associated with the prosecution of this action; and

L. That Counterclaimants be granted such further relief as the Court may deem just.

**COUNTERCLAIMANTS HEREBY DEMAND A JURY TRIAL IN THIS ACTION**

Respectfully Submitted,

GASTON & GASTON,
A PROFESSIONAL LAW CORPORATION,

Date: February 20, 2015

By: /s/ Frederick W. Gaston, Esq.
ATTORNEYS FOR COUNTERCLAIMANTS
GENERAL HEMP, LLC, KANNAWAY, LLC,
and HDDC HOLDINGS, LLC