PHILLIP C. SAMOURIS, ESQ. (Bar No. 163303)
samouris@higgslaw.com
MICHAEL J. HOISINGTON, ESQ. (Bar No. 201679)
mhoisington@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
TEL: 619.236.1551
FAX: 619.696.1410

Attorneys for Plaintiff
CannaVest Corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CannaVest Corporation, a Nevada corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Kannaway, LLC, a California limited liability company; et. al,<br><br>　　　　　　Defendant. | CASE NO. 14-cv-02160-CAB-BLM<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' EVIDENCE RE: AMOUNT OF PRELIMINARY INJUNCTION BOND [DOC. NO. 24]**<br><br>Hearing Date:  February 12, 2015<br>Dept:  4C<br>Judge:  Hon. Cathy A. Bencivengo |

## I.

## RESPONSE

Defendant Kannaway, LLC's claim that Plaintiff should be required to post a preliminary injunction bond in the amount of $30,488,666 is totally baseless and should be rejected. Defendant's outrageous request is based solely upon the declaration of Michelle Sides [Doc. No. 24], a so-called "Principal" of Defendant who improperly relies on the outrageous conclusions contained in an unreliable and inadmissible presentation from Houlihan Capital concerning the value of Kannaway (the "Houlihan Fairness Opinion") which misses the point. Specifically, Ms. Sides asserts that Kannaway was supposedly poised to sell 100% of its membership

---

interest to a related entity, Medical Marijuana, Inc. ("MJNA")[1], in exchange for $80M worth of MJNA stock and that, according to Ms. Sides, 1/3 of Kannaway's sales, profits and value is directly attributable to the projected sales of the enjoined CANNABIS BEAUTY DEFINED products through 2017. Thus, so the argument goes, Defendant will suffer a reduction in value of 33% or $26.6M as a result of the injunction. [Sides Decl., ¶7, p.4, lines 2-7.] As discussed below and in the accompanying Declaration of Joseph Dowling, Ms. Sides' argument completely lacks merit for many reasons.

**First**, Ms. Sides' argument misses the point of the bond which is supposed to be sufficient to protect Kannaway from the reasonably anticipated loss that it may suffer as a result of the injunction, namely the profits that it would have gained from the reasonably foreseeable sales of the enjoined brand over the next 6 months. Instead, Ms. Sides' loss calculation is improperly based upon the supposed diminution of value of Kannaway. Defendant has failed to provide a clear picture of its past sales of the enjoined brand and a reliable projection of such future sales. Ms. Sides' naked assertion that Kannaway has sold over $4.6M of CANNABIS BEAUTY DEFINED products since March 1, 2014 is contradicted by the records attached to her declaration. Her Exhibit C [Doc. No. 24-1] appears to reflect sales of $3.6M of the subject product, although it is unintelligible. Moreover, the Houlihan Fairness Opinion dated 12/31/2014 reflects that Kannaway commenced product sales in May 2014, that **total**, actual product sales from May thru October 2014 were about $3.66M and that total projected 2014 product sales would be about $4.2M. [Doc. No. 24-17, pp. 17 and 27.] If sales of CANNABIS BEAUTY DEFINED products constitute 33% of Kannaway's total sales, as Ms. Sides asserts [Sides Decl., ¶ 4], then sales of the subject product were about $1.386M in 2014 or about $173,250/mo—nowhere near the amount claimed by Ms. Sides.

---

[1] Ms. Sides is also the Chairman of the Board and the COO of MJNA. [See accompanying Decl. of Samouris.]

**Second**, the valuation set forth in the Houlihan Fairness Opinion is based upon absurd sales projections thru 2017 and is thus grossly inflated and totally unreliable. Indeed, Houlihan Capital admits that it did not use generally accepted valuation methods but instead solely relied upon a discounted cash flow valuation based upon outrageous sales projections provided by Kannaway. [Doc. No. 24-17, pp. 22 and 24-25.] The opinion shows that Kannaway's *total* revenues have been declining since July 2014, to a monthly average of about $350,000. Despite the foregoing, Kannaway opines that its sales will magically increase in 2015 to a monthly average of about $2,100,000, for a total of $24.9M revenue in 2015 (354% increase). The forecast from 2016 through 2018 are equally absurd. (See Dowling Decl., ¶ 6.) The opinion also does not take into account Plaintiff's trademark infringement complaint against Kannaway in this case, although it was filed before the date of the opinion.

**Third**, Ms. Sides incorrectly asserts that Kannaway will lose existing inventory of $2,250,000 as a result of the injunction [Sides Decl., ¶ 8, 4:12-14] which is without support and incorrect. The records produced by Kannaway do not show that it has any existing inventory of CANNABIS BEAUTY DEFINED labeled product and certainly not $2.0M worth of inventory. In fact, its Balance Sheet dated October 31, 2014, reflects *total* inventory of only $37,369 and cash of only $3,644. (Doc. No. 24-17, p. 18.) In light of the foregoing, Ms. Sides' naked assertion that Kannaway now has existing inventory of CANNABIS BEAUTY DEFINED labeled product of $2,250,000 is not credible. In all events, its inventory will not be lost—Kannaway would simply need to rebrand the merchandise.

**Finally**, Ms. Sides' assertion concerning lost promotional costs is vague and misleading. [Sides Decl., ¶ 9.] The record does not show that these costs are directly attributed to the CANNABIS BEAUTY DEFINED products. Rather, they appear to be lump sum payments made to Defendant's sister company, HempMeds PX, LLC, a distributor, which is odd, given that Kannaway is a multi-level

marketing system. In all events, there is no connection between those costs and any potential losses as a result of the preliminary injunction.

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) requires the applicant to post a bond prior to the issuance of a preliminary injunction. The appropriate bond amount is left to the district court's discretion. *Id.* The Ninth Circuit has no steadfast rule as to the amount of a bond as a result of the issuance of a preliminary injunction. *Garrett v. City of Escondido*, 465 F.Supp.2d 1043, 1059 (S.D. Cal. 2006). "Generally, the bond amount should be sufficient 'to protect [the] adversary from loss in the event that future proceedings prove that the injunction issued wrongfully.'" *Id.* (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982)). The Ninth Circuit gives wide discretion to the issuance of preliminary injunction bonds, holding that "[s]o long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

## III.
## CONCLUSION

Based on the foregoing, Defendant's $30M bond request is totally unreasonable and should be rejected. Instead, no bond or a nominal bond of $10,000 would be sufficient.

Respectfully submitted,

DATED: February 24, 2015  HIGGS FLETCHER & MACK LLP

By: /s/Phillip C. Samouris
PHILLIP C. SAMOURIS, ESQ.
MICHAEL J. HOISINGTON, ESQ.
Attorneys for Plaintiff
CannaVest Corporation